**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CR-60219-RAR**

**UNITED STATES OF AMERICA**

v.

**JACOB ANDREW SCHILLER**,

Defendant.
_________________________________/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The possession of a firearm by an individual subject to a domestic violence court order is prohibited by 18 U.S.C. § 922(g)(8). Like many of § 922(g)'s provisions, § 922(g)(8) has been repeatedly challenged under the Second Amendment following the United States Supreme Court's landmark decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). Recently, the Supreme Court addressed the constitutionality of § 922(g)(8) in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Specifically, the Supreme Court found that § 922(g)(8)(C)(i) comports with the Nation's history of disarmament and is therefore consistent with the Second Amendment. *Id.* at 1899–1902. However, the Supreme Court did "not decide whether regulation under Section 922(g)(8)(C)(ii) is also permissible." *Id.* at 1899.

Here, Defendant argues that his prosecution under § 922(g)(8)(C)(ii) is unconstitutional as applied to the facts of his case. *See generally* Motion to Dismiss Indictment ("Motion"), [ECF No. 28]. The Court now faces a question that no district court in this circuit has squarely addressed since *Bruen* and *Rahimi*: whether a prosecution under § 922(g)(8)(C)(ii) complies with the requirements of the Second Amendment. As explained herein, the Court finds that such a prosecution does comply with the history and tradition of firearm regulation in the United States and Defendant's Motion thus warrants denial.

## BACKGROUND

On July 21, 2025, Hibbut-ur-Rauf Naseem Schiller filed an "Amended Petition for Injunction for Protection Against Domestic Violence," pursuant to Florida Statute § 741.30 in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. *See* Government Exhibit 1 ("Amended Petition"), [ECF No. 35-1]. In the Amended Petition, Ms. Schiller describes a series of violent acts and threats of violence by Defendant from 2023 until the date of the order, the parties' acrimonious divorce proceedings, some of Defendant's mental health history, and other state court orders (including a temporary restraining order and a risk protection order). *Id.* at 5–7. Ms. Schiller ends the petition by stating that she fears for her and her son's safety. *Id.* at 8.

After a remote hearing attended by Ms. Schiller, Defendant, and each parties' counsel, Circuit Judge Johnathan D. Lott entered a "Final Judgment of Injunction for Protection Against Domestic Violence with Minor Child(ren) (After Notice)" on August 15, 2025, *nunc pro tunc* to August 12, 2025. *See* Defense Exhibit 1 ("Restraining Order"), [ECF No. 28-1]. The Restraining Order explicitly prohibits "any acts of domestic violence against" Ms. Schiller by Defendant, including any "criminal offense resulting in physical injury or death" or "intentional unlawful threat, word or act to do violence" to Ms. Schiller or her family. *Id.* at 2. The Restraining Order also advises Defendant that it is a federal criminal felony to "possess in or affecting commerce, any firearm or ammunition . . . while subject to" the Restraining Order. *Id.* at 3 (citing 18 U.S.C. § 922(g)(8)).

On July 2, 2026, Defendant was arrested on unrelated federal criminal charges. *See* Criminal Complaint, [ECF No. 1] at 4. Law enforcement conducted a search of Defendant's residence at the time of arrest and again on July 29, 2026, pursuant to a federal search warrant. *Id.* at 4–5. During the second search, law enforcement uncovered a firearm, as well as multiple

firearm parts and accessories, in Defendant's residence. *Id.* at 5. On August 20, 2026, a federal grand jury indicted Defendant in the present case under § 922(g)(8) for possession of a firearm and ammunition while subject to a court order prohibiting the use, attempted use, or threatened use of physical force against an intimate partner. *See* Indictment, [ECF No. 21].

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 permits a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). A Rule 12(b) motion may challenge the constitutionality of the statute under which a defendant is indicted. *See e.g., United States v. Bolatete*, 977 F.3d 1022, 1031–32 (11th Cir. 2020) (evaluating constitutional attacks defendant presented in motion to dismiss indictment).

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "The Amendment guarantees Americans the right to 'have weapons' and to carry them 'outside of an organized militia.'" *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1114 (11th Cir. 2025), *cert. denied sub nom. Nat'l Rifle Ass'n, Inc. v. Glass*, 146 S. Ct. 2811 (2026) (quoting *Heller*, 554 U.S. at 582, 584). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626.

The Supreme Court recently clarified the two-step analysis a court must conduct when determining whether a statute unconstitutionally infringes on an individual's right to keep and bear arms. *See Bruen*, 142 S. Ct. 2111 (2024). "First, courts must determine whether 'the Second Amendment's plain text covers an individual's conduct.'" *Fla. Comm'r of Agric. v. Att'y Gen. of United States*, 148 F.4th 1307, 1315 (11th Cir. 2025) (quoting *Bruen*, 142 S. Ct. at 2129–30). If it does, "[a]t the second step, the Government is required to 'justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting

*Bruen*, 142 S. Ct. at 2130). "Why and how the regulation burdens the right are central to this inquiry." *Rahimi*, 114 S. Ct. at 1898. Additionally, "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2133).

## ANALYSIS

Defendant was indicted for a violation of § 922(g)(8). *See* Indictment, [ECF No. 21]. The statute contains three criteria that must be met before it is unlawful for an individual subject to a domestic violence court order to possess a firearm. The last criteria—subsection (C)—provides "two independent bases for liability." *Rahimi*, 144 S. Ct. at 1898. The Supreme Court has explained these bases as follows:

> First, the defendant must have received actual notice and an opportunity to be heard before the order was entered. § 922(g)(8)(A). Second, the order must prohibit the defendant from either "harassing, stalking, or threatening" his "intimate partner" or his or his partner's child, or "engaging in other conduct that would place [the] partner in reasonable fear of bodily injury" to the partner or child. § 922(g)(8)(B). . . . Third, under Section 922(g)(8)(C), the order must either contain a finding that the defendant "represents a credible threat to the physical safety" of his intimate partner or his or his partner's child, § 922(g)(8)(C)(i), or "by its terms explicitly prohibit[ ] the use," attempted use, or threatened use of "physical force" against those individuals, § 922(g)(8)(C)(ii).

*Id.* at 1896. In *Rahimi*, the defendant was subject to a restraining order that contained an explicit finding of a credible threat. *Id.* Accordingly, the Supreme Court cabined its review of § 922(g)(8) to prosecutions relying on (C)(i) and found the statute to be facially constitutional. *Id.* at 1903. The Supreme Court did "not decide whether regulation under Section 922(g)(8)(C)(ii) is also permissible." *Id.* at 1899.

Since *Rahimi*, every circuit that has confronted the question of (C)(ii)'s constitutionality has found the statute to comport with the Second Amendment. *See US v. Combs*, No. 23-5121, 2024 WL 4512533, at *3 (6th Cir. Oct. 17, 2024) (finding § 922(g)(8)(C)(ii) to survive a facial

challenge); *US v. Perez-Gallan*, 125 F.4th 204, 215–16 (5th Cir. 2024) (same); *US v. Gordon*, 137 F.4th 1153, 1187–88 (10th Cir. 2025) (same); *US v. VanDyke*, 157 F.4th 1082, 1087–88 (9th Cir. 2025) (finding § 922(g)(8)(C)(ii) to survive an as-applied challenge). District courts across the country have also consistently denied motions to dismiss indictments brought under (C)(ii) on the basis of an as-applied constitutional challenge. *See US v. Zamborowski*, No. 24-CR-93-A, 2025 WL 378397, at *2–3 (W.D.N.Y. Feb. 4, 2025) (denying defendant's as-applied challenge); *US v. Gilliland*, No. CR-25-146-PRW, 2025 WL 3017433, at *8 (W.D. Okla. Oct. 28, 2025) (same); *US v. Gruber*, No. CR 25-111-GF-BMM, 2026 WL 184550, at *6–8 (D. Mont. Jan. 23, 2026) (same); *US v. Mayence*, No. 26-189, 2026 WL 3075042, at *2–4 (W.D. La. Oct. 14, 2026) (same). However, neither the Eleventh Circuit nor any district court in this circuit have addressed the constitutionality of § 922(g)(8)(C)(ii), facially or as applied, after *Rahimi*.

Defendant moves to dismiss the Indictment on the basis that his prosecution under § 922(g)(8)(C)(ii) is unconstitutional. While Defendant acknowledges that all three statutory requirements of § 922(g)(8) were met here, he argues that the "statutory provision [of (C)(ii)] conflicts with the plain text of the Second Amendment." Mot. at 12. Defendant emphasizes that under the test laid out in *Bruen*, "the Government cannot carry its burden of showing that its section 922(g)(8)(C)(ii)-based prosecution of Mr. Schiller—which rests solely on the August 15, 2025 restraining order disarming him for four years without any finding that he posed a credible threat of violence to any person—is consistent with the Nation's history and tradition of firearm regulation." *Id.* The Government disagrees, contending that Defendant's prosecution under § 922(g)(8)(C)(ii) comports with the Second Amendment. *See generally* Resp.

The Government concedes that the text of the Second Amendment plainly covers Defendant's possession of a firearm—the first question a court must ask under the test set forth in *Bruen*. *See* Resp. at 6. Accordingly, the Court proceeds directly to the second step—whether

Defendant's prosecution under § 922(g)(8)(C)(ii) "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

**I. Defendant's disarmament comports with the requirements of the Second Amendment because the state court that issued the Restraining Order implicitly found Defendant to pose a credible threat of domestic violence.**

The Supreme Court in *Rahimi* determined that § 922(g)(8) "fits comfortably within" this Nation's historical tradition of "preventing individuals who threaten physical harm to others from misusing firearms." 144 S. Ct. at 1896–97. In coming to this conclusion, the Supreme Court looked to the historical legal regimes of surety laws and going armed laws, finding them to be sufficient historical analogs to § 922(g)(8). *See id.* at 1899–1901. "Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901. Accordingly, "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 1903.

As circuits that have confronted the constitutionality of a prosecution relying on § 922(g)(8)(C)(ii) note, the Supreme Court's analysis in *Rahimi* is not rendered irrelevant simply because it only analyzed § 922(g)(8)(C)(i)'s compliance with the Second Amendment. Both (C)(i) and (C)(ii) seek to mitigate threats of physical violence; do not restrict arms use by the general public; impose a temporary restriction on an individual's right to bear arms; and apply after notice and an opportunity to be heard—all factors the Supreme Court analyzed in *Rahimi*. *See Gordon*, 137 F.4th at 1156 (comparing the features of (C)(i) emphasized by the *Rahimi* Court with the features of (C)(ii)). The two subsections of § 922(g)(8)(C) diverge only in what they require from the domestic violence restraining order. For (C)(i), the order must "include[] a finding" that the defendant "represents a credible threat to the physical safety of such intimate partner or child." § 922(g)(8)(C)(i). For (C)(ii), the order must "by its terms explicitly prohibit[] the use, attempted

use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." § 922(g)(8)(C)(ii). So, while both subsections share the same "why" (temporary disarmament of those who pose a credible threat of violence to others), (C)(i) and (C)(ii) differ in "how" they impose this restriction.

Simply put, (C)(ii) allows for a prosecution to rely on a restraining order that does not contain an *explicit* judicial finding of a credible threat. This is because the judicial act of issuing such a restraining order may "necessarily impl[y] that the defendant poses a clear threat of violence to another[.]" *Perez-Gallan*, 125 F.4th at 214.[1] To determine if the issuing state court made such an *implicit* finding, courts have looked to the requirements of the state law under which the order was issued. *See id.* at 215 (analyzing Kentucky's procedures for issuing a domestic violence restraining order); *Gordon*, 137 F.4th at 1157–58 (same for Utah); *VanDyke*, 157 F.4th at 1086–87 (same for Idaho).

Here, Defendant's Restraining Order was issued pursuant to Florida Statute § 741.30. Restraining Order at 1. Under § 741.30, a court presented with a petition seeking protection from domestic violence must comply with the following procedure before issuing a restraining order:

> Upon notice and hearing, when it appears to the court that the petitioner is either the victim of domestic violence as defined by s. 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence, the court may grant such relief as the court deems proper, including an injunction[.]

FLA. STAT. § 741.30(6)(a). To determine whether the petitioner is a victim of domestic violence or has reasonable cause to believe he or she is in imminent danger of becoming such a victim, "the

[1] The Fifth Circuit also noted that in enacting § 922(g)(8), Congress legislated against the background of the established equitable principles of preliminary injunctions, which require "a presently existing actual threat." *Perez-Gallan*, 125 F.4th at 214–15 (quotations and emphasis omitted). "This means that for at least some (and hopefully all) protective orders, the issuing court was satisfied that the subject posed an actual threat—even if the order did not include an explicit 'finding that such person represents a credible threat.'" *Id.* at 215 (quoting § 922(g)(8)(C)(i)).

court shall consider and evaluate all relevant factors alleged in the petition[.]" § 741.30(6)(b). This includes, but is not limited to, any history of abuse, attempted harm, threats to petitioner's child, use or threats to use weapons, physical restraint of petitioner, criminal history, previously issued orders of protection, destruction of personal property, or substance abuse. § 741.30(6)(b)(1)–(11). And if the court determines that the statutory prerequisites for § 741.30 are met, it has a litany of remedies it may choose from, including but not limited to issuing a domestic violence restraining order, awarding petitioner exclusive use of a shared home, providing petitioner with full custody of a minor child, mandating that the exchange of a minor child occur at a neutral safe location, establishing an order of temporary support, ordering medical treatment, referring petitioner to a domestic violence center, or awarding petitioner with exclusive care of a shared animal. § 741.30(6)(a)(1)–(9).

Thus, the requirements of § 741.30 make clear that an order satisfying (C)(ii)—prohibiting violence against an intimate partner—is only issued after a court determines that the party seeking such an order was a "victim of domestic violence" or "has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence" and the proper relief was to restrain the individual "from committing any acts of domestic violence." § 741.30(6)(a). Florida law does not require the issuing state court to make explicit findings of fact, but the state court must consider the petition before it and make an individualized determination following notice and a hearing. This Court reads such a determination to require an implicit finding of a credible threat.

Defendant argues that an implicit finding is not consistent with the history and tradition of disarmament in the United States. Specifically, he contends that the Supreme Court in *Rahimi* found surety and going armed laws to be "relevantly similar" to § 922(g)(8) "only because those laws required individualized, case-specific judicial findings that a person actually posed a threat before he or she could be disarmed." Mot. at 19. But a close examination of the surety laws

advanced by the Government as a historical analog reveals that explicit findings of fact were not required before an individual's right to bear arms could be regulated. Rather, surety laws show that disarming could occur after notice, an opportunity to be heard, and an individualized determination—the same "how" required by § 741.30. Take the Massachusetts surety law, discussed at length in *Rahimi*. *See* 144 S. Ct. at 1900. First, a complaint was made to a magistrate regarding an individual who might commit a crime. Mass. Rev. Stat., ch. 134, § 2. The magistrate would then "examine the complainant" and require the individual to appear if the complainant showed "just cause." *Id.* at §§ 2–3. After hearing any defenses, the magistrate could then compel the individual to post a bond in order to "go armed." *Id.* at §§ 4, 16. The "how" of Massachusetts's surety laws shows that a court was not required to make an explicit finding. Rather, there needed to be an individualized determination before the right to bear arms could be infringed. This mirrors the process by which a restraining order is issued under § 741.30 of the Florida Statutes.

Accordingly, by issuing the Restraining Order at issue in this case, the state court made an implicit finding that Defendant posed a credible threat of violence. Both the "how" and "why" of Defendant's disarmament under § 741.30 and § 922(g)(8)(C)(ii) are relevantly similar to the historical analog of surety laws, and thus the restrictions the Florida statute imposes on the right to bear arms are consistent with this Nation's history and tradition.

## II. The state court's finding that no past violence or threats of violence occurred does not undermine the individualized determination that Defendant posed a credible future threat.

Defendant also argues that even if the Second Amendment permits disarmament based on an implicit finding of a credible threat, the unique facts of this case rebut the existence of such a finding. *See* Transcript of Oral Argument at 55–56. Defendant points to Section II of the Restraining Order, titled "NO FINDINGS," which reads:

> THE RESPONDENT, MR. JACOB SCHILLER, DENIES THE PETITIONERS [sic] ALLEGATIONS, BUT HAS NO OBJECTION TO THE INJUNCTION BEING ISSUED FOR A PERIOD OF 4 YEARS. THE PARTIES ALSO AGREE THAT THE COURT SHALL MAKE NO FINDINGS THAT VIOLENCE OR THREAT OF VIOLENCE OR STALKING ACCURRED [sic]. ADDITIONALLY, ANY CONTACT THAT WILL BE PERMITTED BETWEEN THE PARTIES WILL BE THAT WHICH IS EXPRESSLY PERMITTED BY ANY EXISTING OR FUTURE ORDERS ISSUED BY THE FAMILY LAW DIVISION IN CASE NO. FMCE 23-12647 (33).

Restraining Order at 2. It is clear that the state court made no findings of fact as to whether violence or threats of violence occurred in the past. However, that is not the only basis for the issuance of a domestic violence restraining order under § 741.30. Once again, under Florida law, a state court may issue a domestic violence restraining order "upon notice and hearing, when it appears to the court that the petitioner is either the victim of domestic violence as defined by s. 741.28 *or* has reasonable cause to believe he or she is *in imminent danger of becoming* a victim of domestic violence . . . ." § 741.30(6)(a) (emphasis added). In other words, § 741.30 requires either a past credible threat or a reasonable fear of a future credible threat before a restraining order may be issued.

Here, the issuing state court declined to find a past credible threat when it stated that "THE COURT SHALL MAKE NO FINDINGS THAT VIOLENCE OR THREAT OF VIOLENCE OR STALKING ACCURRED [sic]." Restraining Order at 2. But the state court nevertheless issued the Restraining Order after considering the Amended Petition and other papers before it, and Defendant does not argue that the Restraining Order was invalidly issued. *See* Transcript of Oral Argument at 10.[2] Accordingly, the state court determined that Ms. Schiller reasonably believed there was a future credible threat of domestic violence by Defendant.

---

[2] The Court notes that the Restraining Order was issued after a hearing that Defendant attended—and Section II's statement of "no findings" is very likely a negotiated resolution for the benefit of Defendant. That said, it is an open question whether an individual's Second Amendment rights may be waived. *See*

Defendant warns the Court against conducting a "collateral review" of the state court that issued the Restraining Order by looking at Defendant's broader record to ascertain an implicit finding of a credible threat. Rep. at 2. Defendant argues that this Court should not look beyond the Restraining Order itself, for the state court "necessarily considered the prior facts and state-court filings before expressly declining to enter findings that Mr. Schiller had engaged in violence or threats of violence." *Id.* at 2–3. But as discussed above, the Court need not look beyond the Restraining Order to determine that the issuing state court made an implicit finding of a credible threat. The act of issuing the order, after considering Ms. Schiller's petition and other papers before it, is enough for there to be an implicit finding by the state court.

Like the Fifth Circuit noted, there may be applications of (C)(ii) that are problematic. *See Perez-Gallan*, 125 F.4th at 216 (discussing how a (C)(ii) prosecution based on "mutual" protective orders may run afoul of the Second Amendment). Had the issuing state court explicitly made no findings of past violence or threats of violence *and* found no reasonable cause to believe Defendant posed a future credible threat to Ms. Schiller, Defendant could not have been disarmed consistent with Florida law and the Second Amendment. But the state court in this case did not go that route. While the state court made no finding of a past credible threat, by issuing the Restraining Order it implicitly found that Defendant posed a future credible threat.

**<u>CONCLUSION</u>**

The Supreme Court in *Rahimi* held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 144 S. Ct. at 1903. While such a finding can be explicit under § 922(g)(8)(C)(i), it

Bonnie Carlson, Rahimi *and the Future of (the Rest of) the Protection Order Prohibition*, 78 SMU L. Rev. 433, 454–56 (2025) (arguing that a defendant can waive his Second Amendment rights and does so when he consents to a domestic violence restraining order). But the Court need not address the question of waiver to rule on the present Motion.

can also be implicit under § 922(g)(8)(C)(ii) when the state court issuing the restraining order makes an individualized determination regarding the threat posed by the defendant. In issuing the Restraining Order underlying the prosecution in this case, the state court made an implicit finding that Ms. Schiller had "reasonable cause to believe [she was] in imminent danger of becoming a victim of domestic violence" as required by § 741.30 of the Florida Statutes—and that the proper remedy was a restraining order against Defendant. Such an implicit finding is consistent with the historical tradition of surety laws. Thus, Defendant's temporary disarmament under the Restraining Order—and his prosecution under § 922(g)(8) for possessing a firearm while subject to such an order—comply with the requirements of the Second Amendment.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Indictment, [ECF No. 28], is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 3rd day of November, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**